## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ELAJUWAN JARROD WORLDS,

     Plaintiff,

v.                                Case No: 8:21-cv-1534-CEH-SPF

HOME DEPOT U.S.A., INC., CITY
OF LAKELAND and EDWARD
SEALEY, III,

     Defendants.

_____/

## <u>O R D E R</u>

This matter comes before the Court on Defendant Home Depot U.S.A., Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (Doc. 7) and Defendants City of Lakeland and Detective Edward "Ted" Sealey III's Joint Motion to Dismiss (Doc. 8). In the motions, Defendants argue that Plaintiff's Amended Complaint should be dismissed because Defendant Sealey is entitled to qualified immunity, Plaintiff fails to allege a constitutional deprivation, and Plaintiff fails to state a claim. Plaintiff filed an omnibus response in opposition (Doc. 12) arguing that he has established a constitutional violation because the arrest warrant against him was secured through Defendants' false statements, omissions of material fact, and embellishment. The Court, having considered the motions, and being fully advised in the premises will grant Defendants' motions as to the federal claims, dismiss Plaintiff's federal claims

with prejudice, and decline to exercise supplemental jurisdiction of the state law claims.

## I. BACKGROUND[1]

Plaintiff, Elajuwan Worlds ("Plaintiff"), sues Defendants Home Depot, Sealey, and the City of Lakeland alleging constitutional and state law claims arising out of his arrest for the crime of armed robbery. Plaintiff filed an Amended Complaint (Doc. 6) on June 29, 2021. He attaches to his Amended Complaint the Arrest Warrant issued against Plaintiff (Doc. 6-1); the Polk County Sheriff's Booking Sheet and Order following First Appearance (Doc. 6-2); the Probable Cause Affidavit sworn out by Sealey (Docs. 6-3, 6-6); Lakeland Police Department Officer Ronald Rose's February 3, 2019 report of his investigation and interviews of witnesses (Doc. 6-4); Sealey's April 18, 2019 report of his investigation and interview of witnesses (Doc. 6-5); docket sheet of criminal case *State of Florida v. Elajuwan Jarrod Worlds*, Polk County Case No. 2019CF003125A000XX (Doc. 6-7); and the State Attorney's "No Bill" on the charge of Robbery with a Firearm against Plaintiff (Doc. 6-8).

The events giving rise to his claims are as follows: On February 2, 2019, a Home Depot store, located in Lakeland, Florida, contacted the Lakeland Police Department to report a shoplifting incident. Doc. 6 ¶ 15. Within minutes of the call, Lakeland

---

[1] The following statement of facts is derived from the Plaintiff's Amended Complaint and attachments (Doc. 6), the allegations of which the Court must accept as true in ruling on the instant motion. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp S.A.*, 711 F.2d 989, 994 (11th Cir. 1983); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Police Department Officer Rose arrived at the Home Depot store and began his investigation. *Id.* Based on eyewitness accounts, two males entered the store and asked for assistance getting several large items down from the shelves. *Id.* ¶ 16. Matthew Ure, a Home Depot employee, assisted them in retrieving the items. *Id.* The items consisted of two Echo Brand Backpack Blowers; two Dewalt Brand Weed Trimmers; and one Honda Generator/Power Inverter. *Id.* ¶ 15. According to Home Depot, the total retail value of the alleged stolen merchandise was $2,165.00. *Id.*

### a.   Officer Rose's Report of Eyewitness Statements

Store manager David Crowthers stated two male suspects, who appeared to be lawn maintenance workers, entered the store on February 2, 2019, and requested assistance with retrieving equipment from an upper shelf. *Id.* ¶ 16. After observing employees assist the two suspects, Crowthers directed employees to watch the suspects to make sure they paid for the items before leaving the store. *Id.*  Crowthers observed the suspects leave through the garden department with the merchandise. *Id.* A Home Depot cashier advised that one suspect flashed what appeared to be a receipt as the suspects walked out of the store. *Id.* Crowthers was alerted that the suspects had not paid for the merchandise, and he and employee Kenneth Williams confronted the two suspects in the parking lot as they were loading the stolen merchandise into a black Chrysler Pacifica. *Id.*  The suspects refused to show their receipt to Crowthers. *Id.* Crowthers attempted to identify the license plate number, but one of the suspects proceeded to block the license plate, while the other lifted the vehicle's rear hatch door

so the license plate number was out of view. *Id.* Crowthers took pictures of the suspects on his phone. *Id.*

Crowthers described the suspects as follows:

> Suspect 1 black or Hispanic male 35-40 years old, 5'07" and 165 pounds. Suspect 1 was wearing an orange construction vest, dark sleeve shirt and dark pants. Suspect 1 also had on a baseball cap and sunglasses.

> Suspect 2 black or Hispanic male 35-40 years old, 5'07" around 165 Lbs. Suspect 2 was wearing a dark "Audi" t-shirt, grey sweat pants and black shoes. Suspect 2 was wearing a baseball cap and mirrored sunglasses.

*Id.* Employee Matthew Ure reported that he helped the suspects while they were in the store. *Id.* Ure heard one of the suspects say they were from Tampa. *Id.* Ure said they spoke perfect English, and he did not notice any distinguishing accents. *Id.* Rose checked the surrounding area, but he did not locate any evidence or other witnesses. *Id.* ¶ 17. Crowthers told Rose there was store video surveillance. *Id.* ¶ 18.

### b.    Investigation by Detective Edward "Ted" Sealey III ("Sealey")

Defendant Sealey began his investigation of the Home Depot theft on February 6, 2019, several days after the incident. *Id.* ¶ 19. He re-titled the report an "armed robbery" because Rose's report referenced both Crowthers and Williams seeing the suspects in possession of weapons. *Id.* Specifically, Williams told Rose that one of the suspects pointed a gun at him and the other suspect waved the gun at him like "look what I got." *Id.*; *see* Docs. 6-4 at 5 (Rose's report); 6-5 at 3 (Sealey's report).

Unable to reach Crowthers and Williams by phone to interview them, Sealey contacted Troy Hamby, Home Depot's Asset Protection Specialist. Doc. 6 ¶ 20. Hamby told Sealey that Home Depot found the stolen Honda Generator/Power Inverter for sale on a website. *Id.* Hamby based this assertion upon Ure's identification of the man on the website as the same man from the photo taken by Crowthers during the encounter. *Id.*; *see* Doc. 6-5 at 3, 5.

On April 3, 2019, Sealey completed the interviews of Ure, Crowthers, and Williams. Doc. 6 ¶ 22. During the interviews, Sealey presented still shots of the two suspects taken from Home Depot's surveillance video on the date of the incident. *Id.* ¶ 22. From the still photos, Ure, Crowthers and Williams positively identified both suspects in the armed robbery of February 2, 2019. *Id.* The video surveillance showed both suspects wearing dark sunglasses and caps. *Id.* Each interview was audio recorded. *Id.* According to Plaintiff's allegations, the witnesses made the following recorded statements under oath to Sealey, which differed from the statements they gave to Rose on the date of the incident:

(1) Williams:  . . . this eyewitness now described both suspects as tall. One suspect had a beard, but he was not sure if the other did. Williams stated to Sealey that the suspects had deeper voices and had a Hispanic accent but was not sure about their race. While Sealey was interviewing Williams, Sealey showed Williams a still shot photo of the suspect. Sealey told Williams that it's "kind of hard to see". In addition, Williams told Sealey that he (Williams) heard the driver (suspect 1) utter, "Back off" while holding his gun. Only the driver (suspect 1) carried a gun.

(2) Ure: This witness stated to Sealey that he had personally assisted the suspects on February 2, 2019, and that he had gotten on a ladder to pull two generators from a top shelf for the two suspects. Ure

> described the suspects as Hispanic and light skinned. Ure also stated that one suspect wore a yellow vest that was part of a yard company uniform.

> (3) Crowthers: Crowthers stated to Sealey that the suspects were initially assisted by two Home Depot employees. He stated he saw both suspects approach the cash register. Crowthers also stated that he witnessed both suspects wave a receipt and that he had seen both suspects walk out the store together. According to Crowthers, suspect #1, who drove the van, wore an orange vest.

> During the interview, Crowthers told Sealey that one of the guys from the store's loss prevention may have seen one of the stolen items on Facebook. Crowthers told Sealey that he (Crowthers) could not recall if he had seen the picture of the item appearing in Facebook. Sealey also told Crowthers that one of the items could have been the one seen on Facebook or other site. Crowthers stated that Home Depot wanted to prosecute and that "these guys are known."

*Id.* ¶ 31.[2]

### c.    Probable Cause Affidavit and Arrest

Plaintiff was identified as "Suspect One," specifically the individual who pointed the gun at Crowthers and Williams and had waved it at Williams like "look what I got." *Id.* ¶ 23. The second man's identity could not be established. *Id.* On April 10, 2019, Sealey swore out a Probable Cause Affidavit ("Affidavit") for an Arrest Warrant against Plaintiff. *Id.* ¶ 24. The Affidavit stated in part:

> Suspect, Elajuwan Jarrod Worlds was identified from social media site, Facebook as being suspect one. Wherein a stolen piece of equipment (Honda Generator EU 2200) was posted on his Facebook market place for sale after the incident, he displayed a handgun, made a statement acknowledging the gun to the victim's (sic), pointing the gun at both victim's (sic) during the commission of this crime, I am completing this affidavit for armed robbery. A Bulletin was comprised and disseminated

---

[2] It appears these statements were taken from the interviews conducted by Sealey which were later transcribed. Copies of the transcriptions were not attached to the Amended Complaint.

among our agency and surrounding law enforcement agencies in an attempt to identify the suspects further.

*Id.*; *see also* Doc. 6-6.

Plaintiff alleges that the Affidavit omitted the eyewitness statements made to Rose; the fact that the eyewitness statements given to Sealey on April 3, 2019, were at odds with the statements given to Rose on February 2, 2019, and that the three eyewitness statements of April 3, 2019, conflicted with each other. *Id.* ¶ 25. Sealey omitted that the eyewitnesses gave physical descriptions of both suspects measuring 5'07", weighing around 165, who were black or Hispanic between 35-40, and who spoke "perfect English."[3] *Id.* ¶ 30. When Sealey interviewed Crowthers, Williams and Ure on April 3, 2019, Williams now described both suspects as tall, despite his prior description to Officer Rose that the suspects were 5'07".  *Id.* ¶ 31(a). During the interview, Crowthers told Sealey that one of the guys in loss prevention may have seen the stolen items on Facebook. *Id.* ¶ 31(c). However, Plaintiff alleges Sealey's Affidavit made false statements that the piece of equipment on Plaintiff's Facebook was positively identified as the one stolen from Home Depot. *Id.* ¶ 26.

Pursuant to Sealey's Affidavit, an arrest warrant was issued for Plaintiff, who was detained and taken into custody by the Polk County Sheriff's Office on April 11, 2019. *Id.* ¶ 28. A judicial criminal proceeding was commenced against Plaintiff on the charge of Felony Armed Robbery in violation of Fla. Stat. § 812.13. *Id.* ¶ 32. Plaintiff

---

[3] According to the Polk County Sheriff's Office Booking Sheet and the Arrest Warrant attached to the Amended Complaint, Plaintiff is identified as a black male, 32 years of age, 6'03" in height, and U.S. citizen. Docs. 6-1 at 2; 6-2 at 2.

was held in maximum custody. *Id.* At the First Appearance held on April 12, 2019, Plaintiff was ordered to remain in custody without bond. *Id.* On April 22, 2019, the Office of the State Attorney for the Tenth Judicial Circuit announced a No Bill on the charge of Robbery with a Firearm against Plaintiff. *Id.* ¶ 33. The case was closed, and the Polk County Sheriff's Office was ordered to release Plaintiff from custody. *Id.*

In a seven-count Amended Complaint, Plaintiff sues Defendant Sealey for federal and state law malicious prosecution claims (Counts I and VI) and joint participation/conspiracy under 42 U.S.C. § 1983 (Count II). Plaintiff sues Home Depot in Count II for joint participation/conspiracy under § 1983, and he sues Home Depot for state law claims of malicious prosecution (Count IV) and false arrest/false imprisonment (Count V). Plaintiff sues the City of Lakeland for § 1983 *Monell* claim (Count III) and federal false arrest/imprisonment claim under § 1983 (Count VII). *See* Doc. 6. Defendants Sealey and the City of Lakeland seek an order dismissing with prejudice all counts of the Amended Complaint (Doc. 8) on the basis that Sealey is entitled to qualified immunity on the claims asserted against him because he had probable cause or arguable probable cause to obtain a warrant for Plaintiff's arrest. For the same reason, the City of Lakeland argues Plaintiff is unable to state a claim against it because Plaintiff fails to allege an unconstitutional deprivation of rights. Home Depot moves to dismiss the claims against it because probable cause existed at the time of Plaintiff's arrest, barring any claim for malicious prosecution and false arrest. Doc. 7. Home Depot further argues that any Section 1983 claim against it fails because it is not a state actor and Plaintiff otherwise fails to show a symbiotic relationship between

it and the City of Lakeland to state a claim for conspiracy. Plaintiff opposes the motions. Doc. 12.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are insufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not enough. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.   DISCUSSION

Sealey argues the Amended Complaint fails to state a claim against him because he is entitled to qualified immunity from suit where he had probable cause or arguable probable to obtain a warrant for Plaintiff's arrest. The City of Lakeland asserts Plaintiff fails to state a claim against it because there was no constitutional deprivation and Plaintiff fails to plead facts showing a pattern or practice of unconstitutionally

depriving citizens of the alleged right. Defendant Home Depot argues the constitutional claims in the Amended Complaint are due to be dismissed as to it because it is not a state actor subject to § 1983 liability and it did not act under color of state law.

### A.   Qualified Immunity and Probable Cause

Defendant Sealey asserts a qualified-immunity defense as to the claims brought against him. Qualified immunity protects public officials "from undue interference with their duties" and allows those officials to "carry out their discretionary duties without the fear of personal liability or harassing litigation." *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982); *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir. 2009)). The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (quoting *Harlow*, 457 U.S. at 818). This protection extends to "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted). It is appropriate for a district court to grant a motion to dismiss on the basis of qualified immunity "if the complaint 'fails to allege the violation of a clearly established constitutional right.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (citing *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) (quoting

*Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997)); *see O'Kelley v. Craig*, 781 F. App'x 888, 893 (11th Cir. 2019) ("Because qualified immunity is a defense not only from liability, but from suit, the defense may be raised in a motion to dismiss."), *cert. denied*, 140 S. Ct. 2641 (2020). The Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

In order to invoke qualified immunity, a public official must first establish that he was acting within the scope of his discretionary authority at the time the challenged acts occurred. *Mulvey*, 915 F.3d at 1284. Discretionary authority is understood to encompass all actions the official took (1) in performing his duties and (2) in the scope of his authority. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994). Plaintiff alleges, and Sealey agrees, that Sealey was a detective and full-time employee of the City of Lakeland Police Department. Doc. 6 ¶ 8; Doc. 8 at 5–6. Plaintiff also alleges that he was arrested by Sealey pursuant to an arrest warrant. Doc. 6 ¶ 10. Clearly, Sealey was acting within the scope of his discretionary authority, as there is no dispute that he arrested and detained Plaintiff while Sealey was in his official capacity as a police officer with the City of Lakeland Police Department.

Once there is a finding that Sealey acted within the scope of his discretionary authority, the burden shifts to Plaintiff to show that the extension of qualified immunity is misplaced. *Mulvey*, 915 F.3d at 1284 (citing *Lee*, 284 F.3d at 1194). Thus, the burden lies with the Plaintiff to demonstrate that (1) Sealey violated Plaintiff's

Fourth Amendment constitutional right; and (2) this right was clearly established at the time of Sealey's conduct. *Id.* at 1284. The Court may consider these factors in any order. *Id.*

Relevant to Plaintiff's claim in Count I for malicious prosecution, the Fourth Amendment protects individuals from unreasonable searches and seizures. *See* U.S. CONST. amend. IV. Specifically, the Fourth Amendment provides "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Because they involve unreasonable seizures, constitutional claims for malicious prosecution against state public officials arise under the Fourth Amendment. *See Carter v. Butts Cty.*, 821 F.3d 1310, 1319 (11th Cir. 2016).

To establish a federal claim for malicious prosecution under § 1983, Plaintiff must allege "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free of unreasonable seizures." *Mulvey*, 915 F.3d at 1285. To state a *prima facie* case for malicious prosecution under Florida common law, a plaintiff must allege: (1) an original judicial proceeding against the plaintiff was commenced or continued; (2) the defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the defendant; and (6) the plaintiff suffered damage as a result of the original proceeding. *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994).

Plaintiff contends he adequately alleges the elements of a malicious prosecution claim. In the Amended Complaint, Plaintiff alleges that a criminal proceeding was commenced against him (Doc. 6 ¶¶ 32, 40), and that Sealey was the cause of the proceeding. *Id.* ¶¶ 24–27, 41. He further alleges that the State Attorney announced a "No Bill," closed the case, and released Plaintiff after eleven days, thereby terminating the criminal prosecution in his favor. *Id.* ¶¶ 33, 42. Plaintiff generally alleges the conduct of Sealey was malicious or reckless, and he claims damages due to his incarceration. *Id.* ¶¶ 46, 47. While Defendants take issue with whether a "No Bill" constitutes a termination of the proceeding in Plaintiff's favor, the primary dispute here turns on whether probable cause existed to arrest Plaintiff.

Although Plaintiff makes the conclusory allegation that Sealey's arrest was without probable cause (Doc. 6 ¶ 43), accepting the factual allegations as true and considering the attachments to the Amended Complaint, the Court concludes that under the totality of the circumstances and viewed from the perspective of a reasonable officer, probable cause existed to arrest Plaintiff and therefore Sealey is entitled to qualified immunity.

In establishing whether a seizure pursuant to a legal process violates the Fourth Amendment, the Supreme Court has instructed courts to examine whether "the judicial officer issuing such a warrant [was] supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." *Williams v. Aguirre*, 965 F.3d 1147, 1162 (2020) (quoting *Whiteley v. Warden*, 401 U.S. 560, 564 (1971)). A finding of probable cause is satisfied by a "probability or substantial chance

of criminal activity, not an actual showing of such activity." *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal citations and quotation marks omitted).

In determining whether probable cause exists for an arrest, courts consider the totality of the circumstances viewed from the perspective of a reasonable officer. *Washington v. Howard*, 25 F.4th 891, 898–99 (11th Cir. 2022) (citing *Wesby*, 138 S. Ct. at 586). "Probable cause does not require conclusive evidence." *Washington*, 25 F.4th at 899. "A reviewing court must simply ask 'whether a reasonable officer *could* conclude . . . that there was a substantial chance of criminal activity.'" *Id.* (quoting *Wesby*, 138 S. Ct. at 588) (emphasis in *Washington*).

"Whether an officer possesses probable cause or arguable probable cause to arrest depends on the elements of the alleged crime and the operative facts." *Hardigree v. Lofton*, 992 F.3d 1216, 1230 (11th Cir. 2021) (citing *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004)). However, an officer does not have a duty "to prove every element of a crime before making an arrest," *McCulley v. Jones*, No. 8:17-CV-1681-RAL-MAP, 2017 WL 5631946, at *4 (M.D. Fla. Nov. 22, 2017), *aff'd*, 770 F. App'x 522 (11th Cir. 2019) (quoting *Jordan v. Mosley*, 487 F.3d 1350, 1355 (11th Cir. 2007)).

Plaintiff was arrested and charged with armed robbery in violation of Fla. Stat. § 812.13. Commission of "robbery" in violation of Fla. Stat. § 812.13(1) necessarily requires that the defendant:

> (1) commit a taking of money or other property from another person or in the custody of another person (2) with the intent to permanently or temporarily deprive the person of the money or property or any benefit thereof (3) using

14

> force, violence, or an intentional threat of imminent force
> or violence against another coupled with an apparent ability
> to use that force or violence, or by causing the person to fear
> death or great bodily harm (4) where the money or property
> has value.

*United States v. Fritts*, 841 F.3d 937, 941 (11th Cir. 2016) (quoting *United States v. Lockley*, 632 F.3d 1238, 1242–43 (11th Cir. 2011)). If the offender carries a weapon while committing the robbery, "then the robbery is a felony of the first degree." Fla. Stat. § 812.13(2)(a).

In Count I, Plaintiff contends that Sealey violated Plaintiff's clearly established right under the Fourth Amendment to be free from an unreasonable seizure as a result of malicious prosecution. Doc. 6 ¶ 15-31. To state a claim for malicious prosecution and overcome qualified immunity, Plaintiff must allege that the legal process justifying his seizure—the arrest warrant—was constitutionally infirm and that his seizure would not otherwise be justified without legal process. *Williams*, 965 F.3d at 1165. Plaintiff shows that his arrest warrant was constitutionally infirm if he alleges that the officer who applied for the warrant should have known that his application failed to establish probable cause, or that an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant. *Id.* Conversely, if the facts alleged show that probable cause existed for Plaintiff's arrest, the Fourth Amendment is not violated. *See Wood*, 323 F.3d at 878.

Plaintiff alleges the Sealey Affidavit omitted eyewitness statements made to Officer Rose on February 2, 2019; that the eyewitness statements of April 3, 2019,

were at odds with the statements of February 2, 2019, that the eyewitnesses gave to Officer Rose; and that the three eyewitness statements of April 3, 2019, conflicted with each other. Doc. 6 ¶ 25. Plaintiff also alleges that Sealey made false statements in the Affidavit. Doc. 6 ¶ 26. The falsity claimed is Sealey's statement that the piece of equipment posted on Facebook had been positively identified by Home Depot as the equipment stolen. Doc. 6 ¶ 26. In reality, Plaintiff alleges that Crowthers told Sealey that someone in the Loss Prevention department had told him (Mr. Crowthers) that the piece of equipment *could be* the one that had been stolen on February 2, 2019, yet Sealey misrepresented that the piece of equipment on Facebook *was the one* that was stolen from Home Depot. Doc. 6 ¶ 26. He argues these allegations defeat a claim of qualified immunity.

The Eleventh Circuit's opinion in *Paez v. Mulvey*, 915 F.3d 1276 (2019), is instructive on the issues before the Court. In *Mulvey*, the plaintiffs were police officers arrested on public corruption charges for fraudulently failing to report off-duty police work for which administrative fees are owed and claiming on-duty work hours for time that they were working for a private company. *Id.* at 1280. The officers were never tried, and the criminal charges were ultimately dropped three years later. *Id.* Thereafter, the officers sued the police department and the arresting officers alleging unlawful arrest and malicious prosecution under Section 1983 and state common law malicious prosecution claims. *Id.* at 1282. Specifically, the officers claimed their Fourth Amendment rights were violated because the arresting officers left out exonerating information from the probable cause affidavits that secured the arrest

16

warrants. *Id.* at 1281. The complaint alleged the arresting officers' "affidavits contained knowingly false and misleading statements and omitted substantial exculpatory evidence." *Id.* at 1283. The district court denied the defendant arresting officers' joint motion to dismiss based on qualified immunity as to the malicious prosecution claims concluding that "the complaint plausibly alleged that [the defendant officers] intentionally or recklessly made material omissions in their probable cause affidavits." *Id.* at 1283–84. Defendant officers appealed.

In reversing the district court's denial of the motion to dismiss and finding the arresting officers were entitled to qualified immunity, the appellate court noted that "[p]robable cause is not a high bar," and it "requires only probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 1286 (quoting *Wesby*, 138 S. Ct. at 586). The court held that the "arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility." *Id.* at 1286 (citations omitted). The Eleventh Circuit went on to explain:

> This is so, in part, because probable cause is a preliminary determination made initially in an ex parte proceeding. Again, it does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, or even a finding made by a preponderance of the evidence. A law enforcement officer is not required to resolve every inconsistency found in the evidence. . . . [T]he presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause.

*Id.* (internal citation omitted). While intentional or reckless material misstatements or omissions in a warrant affidavit could violate the Fourth Amendment, negligent misstatements or omissions do not. *Id.* at 1287.

In the motion to dismiss, Sealey argues that he had actual, or at least arguable, probable cause to obtain an arrest warrant against Plaintiff for armed robbery. To be entitled to qualified immunity with regard to an arrest, "an officer need not have actual probable cause but only arguable probable cause." *Wood*, 323 F.3d at 878.

The allegations of Plaintiff's Amended Complaint and attachments support that probable cause, or at least arguable probable cause, existed. The allegations show $2,165.00 in merchandise was stolen from the Home Depot by two men. Doc. 6 ¶¶ 15, 16. Eyewitnesses reported that the suspects carried guns. *Id.* ¶ 19. Within a couple days of the robbery, Home Depot's Asset Protection Specialist Hamby said Home Depot employees found the Honda inverter for sale on a website. Doc. 6-5 at 3. Home Depot employee Ure reportedly identified the suspect he was helping as being the same person appearing on the website where the stolen merchandise was listed for sale. Doc. 6 ¶ 20; Doc. 6-5 at 3. Plaintiff was identified by Home Depot employees as one of the suspects who waved a handgun at Crowthers and Williams. Doc. 6 ¶ 23. Sealey reviewed the surveillance footage from the incident and viewed the suspects enter the store without merchandise and leave the store with merchandise without paying for it. Doc. 6-5 at 4. Sealy reviewed still photos taken from the surveillance camera with Williams, Ure, and Crowthers, who positively identified the suspects in the robbery. Doc. 6-6 at 3. Thus, Hamby relayed to Sealey that Home Depot had found their Honda

Inverter for sale on a website. Plaintiff was identified from the social media website, and eyewitnesses who interacted with the robbery suspects identified Plaintiff as one of the two individuals. The equipment was listed for sale within days of the incident. "It is well established that police officers may generally rely on eyewitness accounts and victim statements to establish probable cause." *Bright v. Thomas*, 754 F. App'x 783, 787 (11th Cir. 2018) (citation omitted). Here, Sealey relied on the statements of not one, but three eyewitnesses who personally interacted with the suspects during the robbery and later identified Plaintiff as one of the robbers. These identifications corroborated with each other and were never retracted by the eyewitnesses.

Plaintiff's allegations that there were inconsistencies and/or omissions in the witnesses' statements (*see* Doc. 6 ¶ 25) does not change this result. As discussed by the *Mulvey* court, an arresting officer is not required "to sift through conflicting evidence or resolve issues of credibility," provided the totality of the circumstances "present a sufficient basis for believing that an offense has been committed." *Mulvey*, 915 F.3d at 1286 (citations omitted). Considering the totality of the circumstances, viewed from the perspective of a reasonable officer, the Sealey Affidavit supports probable cause, as it establishes a probability or substantial chance of criminal activity. *Washington v. Durand*, 25 F.4th 891, 898–99 (11th Cir. 2022) (citation *Wesby*, 138 S. Ct. at 586). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Wood*, 323 F.3d at 878 (11th Cir. 2003) (quoting *Hunter*, 502 U.S. at 227).

19

In addition to the alleged inconsistency in the witness statements, Plaintiff argues that there was no evidence tying Plaintiff to the scene or that the generator on the social media site was the one stolen from Home Depot. Further, Plaintiff contends there was no evidence to tie him to a firearm. Doc. 12 at 13–14. As alleged, the eyewitnesses identified Plaintiff as Suspect One and also testified Suspect One had a gun. According to Plaintiff, the video surveillance only showed that Plaintiff "slightly resembled Suspect One based on his race. He argues the eyewitnesses were lying about the facts of the occurrence to fit the crime, but no facts are alleged to support this argument; at most, Plaintiff alleges the eyewitness statements were inconsistent and contradictory.

Plaintiff argues that Sealey falsified the Probable Cause Affidavit by wording it in such a way that a reader would think Plaintiff appeared in the Facebook photo alongside the equipment. Regarding the alleged mischaracterization of the Facebook post in the Affidavit, this does not disturb the probable cause finding. The Affidavit states in pertinent part: "Wherein a stolen piece of equipment (Honda Generator EU 2200) was posted on his Facebook marketplace for sale after the incident." Doc. 6 ¶ 24. Plaintiff alleges that Troy Hamby, Home Depot's Asset Protection Specialist, told Sealey on February 6, 2019, that Home Depot had found their Honda inverter for sale on a website and Home Depot associate Ure identified the man in the photo on the website as one of the suspects. Doc. 6-5 at 3. The post occurred within days of the armed robbery on February 2, 2019. The temporal proximity between the armed robbery and Plaintiff's Facebook post—for the same type of equipment stolen during

the robbery—supports that probable cause exists for the Affidavit. The fact that Plaintiff, who was identified as the same man in the still-photo shots by the eyewitnesses, had a Honda generator that matched the description of the stolen generator, and placed that same generator for sale within several days of the armed robbery supports a finding of probable cause or arguable probable cause. And even if it was a mistake, at most it was a reasonable mistake, not one that was intentionally or recklessly false. It was reasonable under the totality of the circumstances for Sealey to base the Affidavit on this evidence.

The Court is not persuaded by Plaintiff's argument that the still-shot photographs were suggestive and unreliable. These photographs were one factor among many in Sealey's investigation. This is not a situation where the probable cause determination hinged upon the slight resemblance based on race, as Plaintiff suggests. The three eyewitnesses, all identifying Plaintiff as one of the robbers, pictures from Plaintiff's Facebook profile, and the employees' memories of the robbery more than bolster the Affidavit. Plaintiff has not shown that the warrant failed to establish probable cause, and thus fails to establish that Sealey violated a constitutional right that was "clearly established." Accordingly, Sealey is entitled to qualified immunity on Plaintiff's federal malicious prosecution claim, and Count I is due to be dismissed with prejudice. Plaintiff's claim against Sealey in Count II (42 U.S.C. § 1983 joint participation/conspiracy) also fails as discussed below.

**B.    Joint Participation/Conspiracy Against Detective Sealey and Home Depot – Count II**

In Count II, Plaintiff sues Sealey and Home Depot for conspiracy under § 1983. To state a claim for a § 1983 conspiracy to violate constitutional rights, the plaintiff must show that "a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn*, 618 F. 3d 1240, 1260 (11th Cir. 2010). "The plaintiff attempting to prove such a conspiracy must show that the parties reached an understanding to deny the plaintiff his or her rights." *Id.* (internal quotations omitted). However, the act of reporting a suspected crime to the police is insufficient to convert a private actor's actions into public action. *Arline v. City of Jacksonville*, 359 F. Supp. 2d 1300, 1312 (M.D. Fla. 2005) ("merely alerting the authorities and providing information that may lead to an arrest is not sufficient to convert a private persons actions into public action") (citation omitted).

Plaintiff alleges that Sealey and Home Depot were colluding based upon the existence of contradictory eyewitness descriptions of the suspects involved. Doc. 6 ¶ 50. Without any factual predicate, Plaintiff alleges that Sealey and Home Depot reached an understanding and agreement to arrest Plaintiff for a crime that he did not commit based on his race. *Id.* Plaintiff further alleges that Home Depot, in joint participation with Sealey and City of Lakeland,[4] caused Plaintiff to be arrested without evidence or probable cause because of his race.

---

[4] Despite referencing the City of Lakeland in multiple paragraphs, Plaintiff does not sue the City of Lakeland in Count II.

22

Sealey argues that he is entitled to qualified immunity and Count II must be dismissed because the existence of probable cause creates an absolute bar to Plaintiff's § 1983 claim. Defendant, Home Depot, also contends that it is not liable as private conduct is generally not actionable under § 1983. Plaintiff is unable to satisfy the first factor because, as discussed above, no constitutional violation occurred where probable cause existed for the arrest warrant.

Regarding Home Depot's liability, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). For a Section 1983 plaintiff attempting to prove such a conspiracy on a federal malicious prosecution claim, the plaintiff "must show that the parties 'reached an understanding' to deny the plaintiff his or her rights." *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). "The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Id.* at 1563. In the absence of the underlying claim, the conspiracy claim under section 1983 must fail. *Id.* Thus, although Plaintiff alleges that Sealey and Home Depot "reached an understanding and agreement to arrest [Plaintiff]," because the underlying malicious prosecution claim fails due to the existence of probable cause, the conspiracy under section 1983 based on the malicious prosecution necessarily fails. Count II is due to be dismissed with prejudice.

### C.      42 U.S.C. § 1983 *Monell* Claim Against City of Lakeland – Count III

In Count III, Plaintiff alleges Defendant, City of Lakeland, is liable for Plaintiff's arrest because the City "has adopted and maintained for many years a recognized and accepted custom and/or practice and/or policy of arresting and prosecuting African Americans without evidence or probable cause." Doc. 6 ¶ 55.  To establish municipal liability under § 1983, a plaintiff must allege the following elements: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "It is only when the 'execution of the government's policy or custom . . . inflects the injury' that the municipality may be held liable." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Here, Plaintiff fails at the first prong. The existence of probable cause at the time of his arrest constitutes an absolute bar to Plaintiff's *Monell* claim. As previously explained, on the facts alleged in the Amended Complaint, including the attachments, Sealey had probable cause to arrest Plaintiff for the armed robbery based upon the evidence gathered. Thus, no constitutional violation occurred. That alone is dispositive of this claim.

Plaintiff also fails at the second prong. He alleges that the City of Lakeland has in place a recognized policy or custom that requires evidence or probable cause for the arrest or prosecution of African Americans. Doc. 6 ¶ 56. Thus, he does not allege a policy that constituted deliberate indifference. Rather, Plaintiff alleges, without any

supporting factual allegations, that the City of Lakeland fails to enforce the policy and fails to train its Officers. *Id.* at ¶ 57. To demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice. *Id.* at 1290. Plaintiff's allegations that the City of Lakeland acquiesced in the unconstitutional practices or customs and failed to adequately train officers like Sealey are too conclusory and speculative to allege a custom or policy that constituted deliberate indifference to the Plaintiff's constitutional rights. Accordingly, Count III will be dismissed.

### D.   False Arrest/Imprisonment 42 U.S.C. § 1983 Against City of Lakeland – Count VII

In Count VII, Plaintiff alleges false arrest/imprisonment under § 1983 against the City of Lakeland. Constitutional claims of false arrest and false imprisonment consist of "detention without legal process" . . . and "a false imprisonment ends once the victim becomes held pursuant to such [legal] process." *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (noting petitioner was held without legal process; "they did not have a warrant for his arrest"). Here, any detention occurred after Plaintiff's arrest pursuant to a warrant. Thus, because Plaintiff was arrested pursuant to a warrant, and given the absence of any allegations as to a detention "without legal process," Plaintiff fails to state a constitutional claim for false arrest.

Generally, a "claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (citing *Wallace*, 549 U.S. at 388–89). Because there was a warrant here, Defendant City of Lakeland analyzed

Plaintiff's claim assuming that he intended to sue the City for malicious prosecution. The City argues Plaintiff's claim nevertheless fails for the reasons discussed above. As the absence of probable cause is a requirement to state a claim for malicious prosecution, *see Mulvey*, 915 F.3d at 1292, it follows the existence of probable cause is a bar to Plaintiff's claim against the City of Lakeland for malicious prosecution under federal law. Count VII is due to be dismissed.

### E.     Futility of Amendment

Given the Court's conclusion above that Sealey had probable cause, there is no constitutional deprivation. The determination of probable cause is a legal issue. Because there is no constitutional deprivation, amendment of the federal claims would be futile. *See Hardy v. Broward Cty. Sheriff's Off.*, 238 F. App'x 435, 444 (11th Cir. 2007) (holding leave to amend was futile where because plaintiff failed to establish that the deputies violated clearly established constitutional law there was no constitutional deprivation). Accordingly, the federal claims are due to be dismissed with prejudice.

### F.     State Law Claims

Plaintiff's remaining claims in Counts IV (malicious prosecution against Home Depot), V (false arrest/false imprisonment against Home Depot), and VI (malicious prosecution against Sealey) arise under Florida law. The resolution of those claims will require analysis of Florida law. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Therefore, the Court will decline to exercise its supplemental jurisdiction over these remaining claims. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").

Accordingly, it is hereby

**ORDERED**:

1.      Defendant Home Depot U.S.A.'s Inc. Motion to Dismiss Plaintiff's Amended Complaint (Doc. 7) is **GRANTED,** as to the federal claim.

2.      Plaintiff's federal claim against Home Depot in Count II (42 U.S.C. § 1983 Joint Participation/Conspiracy) of the Amended Complaint is **DISMISSED WITH PREJUDICE**.

3.      The Court declines to exercise supplemental jurisdiction over the state law claims against Home Depot in Counts IV (Malicious Prosecution) and V (False Arrest/Imprisonment) of the Amended Complaint. Counts IV and V are **DISMISSED WITHOUT PREJUDICE**.

4.      Defendants City of Lakeland and Detective Sealey's Opposed Motion to Dismiss Amended Complaint (Doc. 8) is **GRANTED,** as to the federal claims.

5.      Plaintiff's federal claims against Sealey in Counts I (42 U.S.C. § 1983 Violation of the Fourth Amendment – Malicious Prosecution) and II (42 U.S.C. § 1983

Joint Participation/Conspiracy) of the Amended Complaint are **DISMISSED WITH PREJUDICE**.

6.     The Court declines to exercise supplemental jurisdiction over the state law claim against Sealey in Count VI (Malicious Prosecution) of the Amended Complaint. Count VI is **DISMISSED WITHOUT PREJUDICE**.

7.     Plaintiff's federal claims against the City of Lakeland in Counts III (42 U.S.C. § 1983 *Monell* Claim) and VII (42 U.S.C. § 1983 False Arrest/Imprisonment) of the Amended Complaint are **DISMISSED WITH PREJUDICE**.

8.     The Clerk is directed to terminate any pending motions and deadlines and close this case.

**DONE AND ORDERED** in Tampa, Florida on March 26, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to: Counsel of Record and Unrepresented Parties, if any